## Case No. 14,043.

### TILGHMAN v. MITCHELL.

[2 Fish. Pat. Cas. 518.] [1]

Circuit Court, S. D. New York. Nov., 1864.

PATENTS—DECOMPOSITION OF FATTY BODIES—RESULTS—PROCESS.

1. The improvement patented to Tilghman is the invention of a process for producing fat acids and glycerine from fatty or oily bodies, which process consists in the action of water upon these bodies at a high temperature and pressure, and which may be effected in any vessel adapted to such use.

2. Tilghman was the first person that discovered the chemical fact that fatty or oily substances could be decomposed, and the fatty acids and glycerine separated by the action of water at a high temperature and under pressure.

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

3. It is not to be supposed that the patentee intends to produce a result, which the commonest knowledge and experience in the business of life would show to be utterly impracticable. This moderate degree of knowledge, at least, should be kept in view in construing the general terms of the description.

[Cited in Roberts v. Schreiber, 2 Fed. 867.]

4. If the defendant has discovered new means of carrying into effect the complainant's process, he may be entitled to a patent for that improvement. But this would furnish no right to the use of the process.

[Cited in Whitney v. Mowry, Case No. 17,-592.]

5. The question is, does the defendant, whatever may be his vessel or machinery, manufacture or produce fat acids and glycerine from fatty bodies by the action of water at a high temperature and pressure, according to the process as explained by the plaintiff in his specification?

This was a bill in equity, filed [by Richard A. Tilghman] to restrain the defendant [Roland G. Mitchell] from infringing letters patent [No. 11,766] granted for an "improvement in processes for purifying fatty bodies," granted to complainant October 3, 1854. The claims, and a portion of the specification, will be found in the report of the case of Tilghman v. Werk [Case No. 14,046].

George Harding and E. W. Stoughton, for complainant.

G. C. Goddard and C. M. Keller, for defendant.

NELSON, Circuit Justice. The bill is filed, in this case, to restrain the defendant from infringing a patent granted to the complainant for a new and useful improvement in processes for purifying fatty bodies, bearing date October 3, 1854, securing the exclusive right to the invention for fourteen years from January 9 preceding.

The patentee declares that his invention consists of a process for producing free fat acids and solution of glycerine from fatty and oily bodies of animal and vegetable origin, which contain glycerine as their base; for this purpose, he subjects the fatty or oily bodies to the action of water at a high temperature and pressure, so as to cause the elements of these bodies to combine with water, and thereby obtain, at the same time, free fat acids and glycerine. He mixes the fatty body to be operated upon with from a third to a half of its bulk of water, and the mixture is to be placed in any convenient vessel in which it can be heated to the melting point of lead, until the operation is complete. The vessel must be closed, and of great strength, so that the requisite amount of pressure may be applied to prevent the conversion of the water into steam.

The patentee then states that the process may be performed more rapidly, and also continuously, by causing the mixture of fatty matter and water to pass through a tube or continuous channel, heated to the temperature already mentioned, the requisite pressure for preventing the conversion of water into steam being applied during the process.

He then gives a particular description and drawing of this mode of carrying into effect his process, but claims no part of it as his invention.

The patentee states that the melting point of lead has been mentioned as the proper heat to be used in the operation of his process, as it has been found to give good results. But the change of fatty matter into fat acid and glycerine takes place with some materials (mentioning some of them) at a lower rate of heat, and the decomposing action of the water becomes more powerful as the heat is increased.

He adds, that by starting the apparatus at a low heat, and gradually increasing it, the temperature giving products most suitable to the intended application of the fatty body employed, can easily be determined.

The fatty acids, he observes, thus produced, may, like those obtained by other methods, be used in the manufacture of candles and soaps, and be applied to various purposes according to their quality. Some fatty bodies, particularly when impure, generate, during the process, a portion of acetic or other soluble acid; in such cases, he says, he adds a corresponding quantity of alkaline or basic matter to the water and oil before they are pumped into the tubes.

The patentee then sets forth his claim, which is—"Having now described the nature of my said invention, and the manner of performing the same, I hereby declare that I claim as my invention the manufacturing of fat acids and glycerine from fatty bodies by the action of water at a high temperature and pressure."

It will be seen, not only from the specification, but also from the claim, that the improvement patented to the complainant is the invention of a process for producing fat acids and glycerine from fatty or oily bodies—which process consists in the action of water upon these bodies at a high temperature and pressure, and which may be effected in any vessel adapted to such use.

There is no claim for the vessel or machinery thus used; but, as it was essential to the validity of the process, as an invention, to show how it may be adapted to practical use, two modes are pointed out—one, any convenient vessel well known to the art, and which some of the witnesses called a digester, the other, the coil apparatus; in either of which, as appears from the proofs, the process could be carried into practical effect, according to our construction of the patent.

It was urged on the argument by the learned counsel for the defendant, that, upon the terms of the specification, the vessel must be entirely filled with mixture of the water and fatty matter, and then be closed, and the contents heated to the point of melting lead, and no steam be permitted to be made in the vessel; and that, upon this hypothesis, no vessel

could be made of sufficient strength to endure the pressure; but we do not agree to this construction. In the first place, the degree of heat was given only as the maximum, and under which the process could be most rapidly carried into effect. For the patentee, speaking upon this part of the specification, says that no fixed degree of heat can be given, as the different fatty or oily substances that may be used will require different degrees; and that, by starting the vessel at low heat and gradually increasing it, the best temperature may be ascertained for the particular substance used.

In the next place, we can not agree that a fair construction of the specification tends to the conclusion either that the vessel was to be entirely filled, or that no steam was to be permitted in it. No doubt, it is true, as urged for the defendant, if thus filled, and the vessel closed, and the contents heated to the point of melting lead, or under a pressure that would prevent the existence of steam, the process would be utterly impracticable; and doubtless, the patentee knew this would be the result as well as any of the experts.

It would require but the commonest knowledge and experience in the business of life to reach such a conclusion.

This moderate degree of knowledge, at least, should be kept in view in construing the general terms of the description.

Beside, the patentee does not direct that the vessel should be entirely filled. This is an inference of the learned counsel, from the direction that the vessel must be closed and be of great strength, so that the requisite amount of pressure be applied to prevent the conversion of the water into steam.

Now, all that was intended, as is apparent from the context, by the patentee was, that the pressure should be so great as to prevent the body of the water in the vessel from passing into steam, as the heated water was the element that separated the fatty acids and glycerine. That there would necessarily be some steam, must have been obvious to the patentee, as well as to any one of common observation.

Now, upon this interpretation of the patent, and which, we think, is the sound one, we repeat what we have already said, that the process could, and has been, carried into successful operation by the means pointed out by the patentee.

Previous to the date of this invention, there were but two modes known or in practical use for decomposing fatty substances, and obtaining from them fatty acids and glycerine— one called the lime saponification process, the other known as the distillation process. It is not material to give a particular description of these modes of separating the fatty acids and glycerine; it is sufficient to say that they were different from the patentee's in the process or mode of producing the result, much more expensive and tedious, and have generally gone out of use, both in this country and in England, since the complainant's improvement has become generally known and practiced.

We have looked through the proofs in the case with some care, and, without going into them in this opinion, are satisfied that the complainant was the first person that discovered the chemical fact, that fatty or oily substances could be decomposed, and the fatty acids and glycerine separated by the action of water at a high temperature and under pressure.

Then, as to the infringement, it is not material to inquire whether the vessel or machinery used by the defendant is, or is not, similar to that described in the complainant's patent.

These constitute no part of his invention. If the defendant, or the persons under whom he uses his machinery, have discovered new means of carrying into effect the complainant's process, he or they may be entitled to a patent for that improvement. But this would furnish no right to the use of the process.

The question here is, does the defendant, whatever may be his vessel or machinery, manufacture or produce fat acids and glycerine from fatty bodies by the action of water at a high temperature and pressure, according to the process as explained by the plaintiff in his specification? We are satisfied that he does, and hence has infringed his patent.

Our conclusion is, that the complainant is entitled to a decree for an injunction and profits.

[NOTE. For hearing on exception to the report of the master, to whom the case was referred, see Case No. 14,041. Pending the suit, the patent expired, but was extended for seven years from 1867. Plaintiff then instituted another suit against the respondent. Case No. 14,042. Both cases were carried to the supreme court on appeal, and the decree in each case was reversed, and the cases respectively remanded, with directions to dismiss the respective bills of complaint. 19 Wall. (86 U. S.) 287.]